Keith W. Heard
Burke & Parsons
100 Park Avenue
New York NY  10017-5533
Telephone:  (212) 354-3800
Facsimile:  (212) 221-1432
Email:    heard@burkeparsons.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SK SHIPPING CO., LTD. and SK B&T PTE. LTD., individually and on behalf of M/V AZURIT (IMO No. 9551703),<br><br>     as Plaintiffs,<br><br>     v.<br><br>NUSTAR ENERGY SERVICES, INC., O.W. BUNKER MIDDLE EAST DMCC; O.W. BUNKER USA INC., and ING BANK N.V.,<br><br>     as Defendants. | 15 Civ. 2141 (VEC)<br><br><br>ECF CASE |

**SUPPLEMENTAL MEMORANDUM OF LAW IN
FURTHER SUPPORT OF PLAINTIFFS' APPLICATIONS
<u>FOR A DEPOSIT ORDER AND A RESTRAINT ORDER</u>**

  Plaintiffs SK Shipping Co. Ltd. and SK B&T Pte. Ltd. submit this memorandum of law in further support of their application to the Court for two orders:  one allowing plaintiffs to deposit funds in support of this interpleader action and a separate order restraining defendants from taking steps to recover their various claims outside the context of this action.

- 1 -

## THE WORLDWIDE RESTRAINT PLAINTIFFS SEEK IS BASICALLY AN ANTI-SUIT INJUNCTION THAT THIS COURT CLEARLY HAS THE POWER TO ENTER.

**A. This Court has the power to enter an anti-suit injunction.**

The leading Second Circuit decision on anti-suit injunctions in international matters is *China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987).  In that case, involving damage to cargo that was being transported on a voyage from the United States to China, an action against the Korean shipowner was well under way in this Court when the shipowner filed a parallel proceeding in Korea.  Upon motion by the cargo damage plaintiffs in the Southern District litigation, this Court issued an injunction to prevent the shipowner from prosecuting the lawsuit in Korea.  On appeal, the Second Circuit reversed the District Court, holding that the issuance of an anti-foreign suit injunction was not justified in the circumstances.

Significantly for purposes of the instant case, the Second Circuit began its analysis by noting that "[t]he power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established." *Id.* at 35.  Admittedly, the Court observed that "[c]oncurrent jurisdiction in two courts does not necessarily result in a conflict." *Id.* at 36.  Thus, "the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a party from proceeding in the foreign forum." *Id.*

The Second Circuit stated that, when a District Court is presented with an application for an anti-foreign suit injunction, it must first determine "(1) whether the parties to both suits are the same and (2) whether resolution of the case before the enjoining court [in the U.S.] would be dispositive of the enjoined [foreign] action." *Id.*  If the case meets these two threshold requirements, a court must then consider whether one of five other factors is present:

1. frustration of a policy in the enjoining forum;

2. the foreign action would be vexatious;

3. a threat to the issuing court's *in rem* or *quasi in rem* jurisdiction;

4. the proceedings in the other forum prejudice other equitable considerations; or

5. adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*American Home Assurance Corp. v. Insurance Corp. of Ireland,* 603 F.Supp. 636, 643 (S.D.N.Y.1984); *see also China Trade,* 837 F.2d at 36. In *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 500 F.3d 111, 119 (2d Cir. 2007), a case in which this Court's issuance of an anti-suit injunction was affirmed, the Court of Appeals elaborated on a District Court's consideration of the five factors as follows:

> *China Trade* instructed that two of these factors should be accorded "greater significance": whether the foreign action threatens the enjoining forum's jurisdiction or its "strong public policies." 837 F.2d at 36. However, we have reiterated that *all* of the additional factors should be considered when determining whether an anti-suit injunction is warranted. *See Ibeto Petrochemical,* 475 F.3d at 64 (disagreeing with courts and commentators that "have erroneously interpreted *China Trade* to say that we consider *only* these two [more significant] factors").

The Second Circuit determined that the Korean lawsuit in *China Trade* did not appear to pose a threat to this Court's jurisdiction and there was no indication the Korean shipowner was "seek[ing] to evade important policies of the forum by litigating before a foreign court." *Id.* at 37. Accordingly, the Second Circuit concluded that the District Court had abused its discretion by issuing the injunction, which was dissolved to allow the shipowner to proceed with its parallel lawsuit in Korea. The importance of *China Trade* to this case is not the result but the test outlined by the Second Circuit to be applied in such cases.

In a subsequent case, *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118 (S.D.N.Y. 1997), *aff'd sub nom.*, *Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998), the result itself was important to this case. In *Farrell Lines*, an ocean carrier transported cargo on a flat-rack container from Livorno, Italy to Norfolk, Virginia for land transportation to Columbus, Ohio. After discharge from the vessel at Norfolk, the stevedore damaged the cargo, resulting in a claim for approximately $800,000. The ocean carrier's bill of lading contained a forum selection clause requiring that all lawsuits against the carrier be filed here in the Southern District.

The cargo underwriters who had insured the shipment paid their assured's claim and began corresponding with the ocean carrier. The District Court's decision does not indicate the nature of this correspondence but, in all likelihood, the ocean carrier told the underwriters that any lawsuit would have to be filed in New York and that, under the U.S. Carriage of Goods by Sea Act ("COGSA"), the carrier's liability was limited to $500. Ch. 229, 49 Stat. 1207 (1936), *reprinted in statutory note following* 46 U.S.C. § 30701 [formerly, 46 U.S.C. sec. 1304(5)]. In all probability, the return correspondence from the cargo underwriters gave the clear indication that they did not intend to do that since the ocean carrier proceeded to file a declaratory judgment action in this Court, seeking a determination that (1) the forum selection clause in the bill of lading was enforceable; (2) plaintiff's liability to defendants for damage to cargo transported on one of plaintiff's vessels was limited to $500 pursuant to COGSA; and (3) the discharging stevedore must indemnify the plaintiff ocean carrier for any liability plaintiff sustained for damage to the cargo. The ocean carrier also moved for an order enjoining the defendant underwriters from filing or prosecuting a legal action relating to the cargo damage in any other forum.

About six weeks after the ocean carrier filed its declaratory judgment action in New York, the cargo underwriters filed suit in Livorno against the ocean carrier's local agent. The ocean carrier then moved for partial summary judgment declaring that its liability for any damage to the cargo was limited

- 5 -

to $500 pursuant to COGSA, and that any suit regarding damage to the cargo must be brought here in the Southern District. The ocean carrier also sought an injunction prohibiting defendants from proceeding with litigation in any other forum, including Italy.

This Court concluded that the underwriters were bound by the forum selection clause in the ocean carrier's bill of lading. The Court also concluded that COGSA applied and that the ocean carrier's liability was limited to $500.

The Court then considered the ocean carrier's application for an anti-foreign suit injunction. Reviewing the criteria spelled out in *China Trade*, the Court concluded that the cargo underwriters filed suit in Italy (a) to avoid the United States policy favoring enforcement of forum selection clauses and (b) to avoid the effect of COGSA's liability limitation provisions. The Court concluded the Italian lawsuit was filed in bad faith and it granted the ocean carrier's request for an injunction to prevent the cargo underwriters "from maintaining their Italian lawsuit, *or from filing any other lawsuit*, concerning damage to the Cargo." 32 F.Supp.2d at 131 [emphasis added]. These rulings by the District Court were affirmed on appeal. *Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998).

Even more recently, in *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 590 F.Supp.2d 526 (S.D.N.Y. 2008), in circumstances similar to what the Court encountered in *Farrell Lines,* the Court issued an anti-suit injunction to prevent the defendant cargo damage claimant from continuing actions it had filed in Panama and Guatemala and from filing any further actions in those or any other jurisdiction outside of the Southern District of New York. As in *Farrell Lines*, the issuance of the foreign anti-suit injunction was affirmed on appeal. *A.P. Moller-Maersk A/S v. Comercializadora de Calidad S.A.*, 429 Fed.Appx. 25 (2d Cir. 2011).

**B. The Court should enter an anti-suit injunction in this case.**

The two threshold requirements that must be met are: "(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.,* 369 F.3d 645, 652 (2d Cir. 2004)(citing *China Trade,* 837 F.2d at 35).

With respect to the first threshold requirement, it is possible, of course, that one of the defendants may choose to sue the contractual purchaser, SK B&T Pte. Ltd., in Singapore, where it is located. That would certainly seem to satisfy the requirement. Perhaps more likely is that one of the defendants will seek to arrest the vessel, the M/V AZURIT, in a foreign port. At first blush, that might not seem to satisfy the first requirement since the named plaintiffs in this action are SK Shipping Co. Ltd. and SK B&T Pte. Ltd. However, plaintiffs contend the first threshold requirement would be satisfied even if a foreign lawsuit were filed against the vessel *in rem*.

First of all, plaintiffs filed this action "individually and on behalf of M/V AZURIT." Secondly, a direct lawsuit against the vessel in a foreign port would be the equivalent of an indirect lawsuit against plaintiff SK Shipping. As Mr. In-Sik Cho of SK Shipping explains in the declaration that accompanies this supplemental memorandum, SK Shipping contractually agreed with the vessel's owner to keep the ship free of liens during the time SK Shipping operated the vessel under time charter. *See* Cho declaration, ¶ 5. Until the various defendants' claims are resolved, SK Shipping is arguably in breach of this requirement. If the AZURIT is arrested in connection with the bunkers supplied to the ship at Houston in October 2014, the vessel's owner will undoubtedly demand that SK Shipping either satisfy the claim of the arresting party or post security to obtain the vessel's release. If SK Shipping fails to do either, the shipowner will undoubtedly proceed against SK Shipping at arbitration in London pursuant to Clauses 17

and 79 of the time charter.  *See* Exhibit A to Mr. Cho's declaration.  Owner has already said as much to SK Shipping in emails dated January 28 and 29, 2015.  In the earlier email, Owner wrote as follows:

> Owners hereby put Charterers on notice that they hold Charterers responsible for any and all loss or damage, howsoever arising, which Owners may suffer if NuStar decide to arrest the vessel or otherwise take action against Owners in respect of their demand for payment.
>
> For the avoidance of doubt, Owners reserve all their rights and remedies both under the said Charterparty and/or at law.

Cho decl., ¶ 17 and Exhibit F.  In the email sent on January 29th, Owner went further and even threatened "the attachment of Charterers' assets."  Cho decl., ¶ 18 and Exhibit F.

Thus, the handwriting is on the wall.  If the Court does not provide the worldwide restraint plaintiffs seek and one of the defendants arrests the AZURIT, its owner will commence proceedings against SK Shipping, as the vessel's time charterer at the time the bunkers were supplied to the ship.  A suit against the ship will become a proceeding against SK Shipping.

It should also be noted that the Courts have displayed flexibility in evaluating the first threshold requirement.  For example, in *Zynga, Inc. v. Vostu USA, Inc.*, 816 F.Supp.2d 824, 828 (N.D.Cal. 2011), the Court wrote as follows:

> Perfect identity of parties is not required for an anti-suit injunction.  Rather, it suffices that the parties be affiliated in such a way that their interests coincide.  *See, e.g., Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552, 562 (S.D.N.Y.2006).

Accord:  *Paramedics Electromedicina v. GE Med. Sys. Info.*, 369 F.3d at 652; *In re Vivendi Universal, S.A. Securities Litigation,* No. 02 Civ. 5571 (RJH)(HBP), 2009 WL 3859066, at *5 (S.D.N.Y. Nov. 19, 2009) ("Where the 'real parties in interest' are the same in two actions, even if all parties are not identical, [the] first threshold requirement will be satisfied."); *Athina Investments Ltd. v. Pinchuk*, 443 F.Supp.2d

177, 180 (D.Mass. 2006)("perfect identity of parties is not necessarily required to meet the threshold inquiry, and courts deciding whether to grant an antisuit injunction have looked behind the names captioned in a complaint to identify the true parties in interest"); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552, 562 (S.D.N.Y. 2006)("Where parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met.").

The second threshold requirement is that "resolution of the case before the enjoining court is dispositive of the action to be enjoined." The purpose of the instant action is to (a) establish a fund that will serve essentially as a substitute for the vessel and (b) for the Court to determine which of the competing claims to the fund should prevail. In an arrest action by one of the defendants against the AZURIT, that party will proceed against the vessel (or substitute security therefor) just as it would proceed with a claim against the fund plaintiffs hope to establish in this action. Likewise, the arresting party would be required to prove that it had a valid claim, just as it would have to do in this action. Thus, resolution of this interpleader action would indeed be dispositive of, and prevent the need for, any arrest proceeding against the vessel.

With the two threshold requirements met, we turn to the five additional factors the Court should consider. The first of these is whether maintenance of the action to be enjoined would frustrate a policy in the enjoining forum – i.e., a policy that is traditionally enforced by this Court. Preventing double payment of a debt is clearly a strong policy of our judicial system. In *Embree v. Hanna*, Johns 101, 102 (1809), the Supreme Court observed that "[n]othing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again." Much more recently, in *Shaheen Sports, Inc. v. Asia Ins. Co.*, 11-920, 2012 WL 919664 at *8 (S.D.N.Y. Mar. 14, 2012), this Court noted that a party's "concern for potential

inconsistent judgments and double liability is therefore very real" and stated that prevention of double liability is a "judicial priority."

For the second additional factor, the Court is to consider whether the litigation or potential litigation to be enjoined would be "vexatious." Almost by definition, multiple litigation arising from a single debt is vexatious. In *State Farm Fire & Casualty Co. v. Tashire*, 286 U.S. 523, 534 (1967), the Supreme Court recognized that where, as here, a number of claimants are contending for possession of a limited "fund" that has been (or is to be) deposited into the Court by a disinterested stakeholder, the interpleader confines the litigation to a single forum and proceeding and protects the stakeholder from "vexatious and multiple litigation."

For the third additional factor, the Court should consider whether the litigation or potential litigation to be enjoined poses "a threat to the issuing court's *in rem* or *quasi in rem* jurisdiction." Protecting this Court's jurisdiction in an interpleader action is essentially similar to protecting the Court's jurisdiction in an *in rem* action. Thus, in *General Acc. Group v. Gagliardi*, 593 F.Supp. 1080, 1089 (D.Conn. 1984), the Court wrote as follows:

> An interpleader is analogous to an *in rem* proceeding in that the stakeholder provides the *res* on which the dispute among the claimants is focused. In controversy among themselves, the claimants present adverse claims to the entire or part of the *res*. The rights to the *res*, in whole or in part, are thus adjudicated among the claimants, not as against the stakeholder who by that time has deposited the *res* in court and been discharged in the usual course.

For the fourth additional factor, the Court is to consider whether "the proceedings in the other forum prejudice other equitable considerations." With respect to such considerations, it is a principle of equity that it abhors "a possible double recovery against a party." *Irving Trust Co. v. Marine Midland Trust Co. of New York*, 47 F.2d 907, 908 (S.D.N.Y. 1931). In addition, equity abhors a "[m]ultiplicity of suits involving issues which can be conveniently tried together." *Id.* Both principles would be advanced

were this Court to issue an anti-suit injunction preventing the defendants from taking action against plaintiffs or the vessel outside of these proceedings.

Finally, for the fifth additional factor, the Court should consider whether "adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." It is extremely difficult to believe that these consequences will not be the result if the defendants are permitted to take action against plaintiffs or the vessel outside of these proceedings. An arrest action in which the vessel is seized would, of course, delay the ship, possibly causing it to miss contractual commitments and thereby increasing the size and significance of any claim the vessel's owner would then pursue against SK Shipping. Such an action would result in inconvenience and expense to the vessel, its owner, its current charterer and to SK Shipping, which would have to pay legal fees not only in this action but also in such other actions as the defendants may file against it or the vessel if the world-wide restraint is not imposed. Multiple actions could also conceivably result in inconsistent rulings. A party claiming a lien against the vessel that would attach to the funds in this action might wind up on the wrong end of a ruling in a foreign court determining that, in fact, it had no lien and, therefore, no right to proceed against the vessel *in rem*. Finally, there would surely be a "race to judgment" as a defendant here who files an action outside of these proceedings (e.g., *in personam* against SK B&T Pte. Ltd. in Singapore or *in rem* against the vessel) would want a determination in the foreign proceeding before this Court could conceivably rule that, in fact, the defendant lacked a good claim against the interpleader funds.

Reviewing the two threshold requirements and the five additional factors, it is clear that this Honorable Court should issue an anti-suit injunction as part of the restraint order sought by plaintiffs to prevent the abuse that could otherwise result. Necessary language appears in the proposed restraint order plaintiffs filed with the Court as follows:

>ORDERED that sufficient security in the amount of $360,450.94 having been ordered deposited into the registry of the Court as substitute *res* and security for all claims arising for payment of the Fuel Delivery to the Vessel on October 21, 2014, further claims against the Vessel and/or Plaintiffs shall not be brought anywhere in the world by any of the named defendants to secure or assert such claims;

*See* proposed Restraint Order, page 3. Plaintiffs respectfully request that the Court sign the proposed order with this language in it.

## CONCLUSION

**FOR THE REASONS SET FORTH HEREIN AND IN THE MEMORANDUM OF LAW FILED ON MARCH 24, 2015, PLAINTIFFS RESPECTFULLY REQUEST THAT THIS HONORABLE COURT ENTER BOTH THE DEPOSIT ORDER AND THE RESTRAINT ORDER PLAINTIFFS SEEK TO ENABLE THIS <u>INTERPLEADER ACTION TO GO FORWARD.</u>**

Dated:   New York NY
         April 21, 2015

BURKE & PARSONS
Attorneys for Plaintiffs
SK Shipping Co., Ltd. and
SK B&T Pte. Ltd.

By: *[signature]*
Keith W. Heard
100 Park Avenue
New York NY  10017-5533
Telephone: (212) 354-3800
Facsimile: (212) 221-1432
Email: heard@burkeparsons.com

- 11 -